## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ORIN TURNER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 11-1170-GMS |
| | ) | |
| DAVID PIERCE, Warden, and | ) | |
| ATTORNEY GENERAL OF | ) | |
| THE STATE OF DELAWARE, | ) | |
| | ) | |
| Respondents.[1] | ) | |

Orin Turner. *Pro se* petitioner.

Karen V. Sullivan, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for respondents.

**MEMORANDUM OPINION**

March 15, 2015
Wilmington, Delaware

---

[1]Warden David Pierce replaced former warden Perry Phelps, an original party to this case. *See* Fed. R. Civ. P. 25(d).

Sleet, District Judge

Pending before the court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (hereinafter referred to as "petition") filed by petitioner Orin Turner ("Turner"). (D.I. 3) The State has filed an answer in opposition. (D.I. 15) For the reasons discussed, the court will deny the petition.

## I.  BACKGROUND

As set forth by the Delaware Supreme Court, the facts leading up to Turner's conviction are as follows:

> On September 18, 2006, Detectives Jeff Melvin and Eric Richardson responded to an emergency call regarding a shooting at the Mishoe Towers apartment complex in Dover, Delaware. Michael Bordley ("Bordley") told the police that while he was in apartment 303 visiting his girlfriend Carol Murray ("Murray") and her son Jonathan (aged 13), a man named "House" (later identified as Turner) entered the apartment and shot Bordley.
>
> Both Bordley and Jonathan testified at trial and positively identified Turner as the shooter. Jonathan testified that Turner knocked on the door and then entered the apartment, carrying a silver revolver wrapped in orange cloth. A woman entered the apartment with him. When Turner entered the bedroom and pointed the gun at Murray and then at Bordley, the woman pushed Johnathan outside the apartment door and into the hallway. From the hallway, Jonathan heard a gunshot coming from inside the apartment.
>
> Bordley also testified that Turner first pointed the gun at Murray, tried to fire it, but the gun did not go off. Turner then pointed the gun at Bordley, fired it, and immediately exited the apartment. After Turner left, Bordley went to the elevator. The police, who arrived shortly thereafter, found Bordley lying inside the elevator on the bottom floor with a gunshot wound to his upper abdomen.

*Turner v. State*, 957 A.2d 565, 567 (Del. 2008).

In October 2007, a Delaware Superior Court jury convicted Turner of first degree assault (as a lesser-included offense to attempted first degree murder), aggravated menacing, second degree burglary, first degree reckless endangering, four counts of possession of a firearm during

the commission of a felony, and carrying a concealed deadly weapon. *Id.* at 567. The Superior Court sentenced Turner as a habitual offender to two consecutive life terms plus a term of years. *Id.* The Delaware Supreme Court affirmed Turner's convictions on direct appeal. *Id.*

In March 2009, Turner filed a motion for postconviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"). The Superior Court denied the Rule 61 motion, and the Delaware Supreme Court affirmed that decision. *See Turner v. State*, 29 A.3d 246 (Table), 2011 WL 3964586 (Del. Oct. 20, 2011).

## II.  GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

### B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b);

*O'Sullivan v. Boerckel,* 526 U.S. 838, 842-44 (1999); *Picard v. Connor,* 404 U.S. 270, 275 (1971). AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i)  there is an absence of available State corrective process; or
>     (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan,* 526 U.S. at 844-45; *Werts v. Vaughn,* 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *Bell,* 543 U.S. at 451 n.3; *Castille v. Peoples,* 489 U.S. 346, 351 (1989).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir. 2000); *see Teague v. Lane,* 489 U.S. 288, 297-98 (1989). Although treated as technically exhausted, such claims are nonetheless procedurally defaulted. *Lines,* 208 F.3d at 160; *Coleman v. Thompson,* 501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but

3

procedurally defaulted. *See Coleman*, 501 U.S. at 750; *Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999); *Coleman*, 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show "that [the errors at trial] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998). In order to establish actual innocence, the petitioner must present new reliable evidence – not presented at trial – that demonstrates "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537-38 (2005); *Sweger v. Chesney*, 294 F.3d 506, 522-24 (3d Cir. 2002).

4

## C. Standard of Review

When a state's highest court has adjudicated a federal habeas claim on the merits,[1] the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). This deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." *Harrington v. Richter*, 562 U.S. 86, 98-100 (2011). As recently explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.*

Finally, a federal court must presume that the state court's determinations of factual issues are correct. 28 U.S.C. § 2254(e)(1); *Appel*, 250 F.3d at 210. This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003)(stating that the clear

---

[1] A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009).

5

and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## III. DISCUSSION

Turner's timely filed habeas petition asserts the following four grounds for relief: (1) Turner's Confrontation Clause rights were violated because the victim of the aggravated menacing charge, Carol Murray, did not testify at his trial; (2) Turner's second statement to the police was coerced and Detective Richardson testified falsely about this coercion during the pre-trial suppression hearing; (3) the State engaged in prosecutorial misconduct; and (4) there was insufficient evidence to support Turner's aggravated menacing conviction. For the following reasons, the court concludes that none of Turner's claims warrant relief.

### A. Claim One: Violation of Confrontation Clause Rights

In claim one, Turner contends that his rights under the Confrontation Clause were violated because the victim of the aggravated menacing offense, Ms. Murray, did not testify at trial. Turner did not raise this claim on direct appeal and, even though he raised the argument in his Rule 61 motion and on post-conviction appeal, neither the Superior Court nor the Delaware Supreme Court addressed it. As such, the court concurs with the State's assertion that it must review the instant argument *de novo*.[2]

In *Crawford v. Washington*, 541 US. 36 (2004), the Supreme Court held that the Confrontation Clause bars the admission of "testimonial statements of witnesses absent from trial," unless the witness is unavailable to testify and the defendant had a prior opportunity for

---

[2]Typically, Turner's failure to raise this argument on direct appeal would result in the court treating the claim as procedurally defaulted. However, the State implicitly waives the procedural default by asserting the applicability of the *de novo* standard of review.

6

cross-examination. *Id.* at 59. As clearly articulated in *Davis v. Washington*, 547 U.S. 813, 823-4 (2006), *Crawford*'s prohibition "applies only to testimonial hearsay" that is admitted to establish the truth of the matter asserted in the statement. *Id.; see also Crawford*, 541 U.S. at 60 n.9. A testimonial statement is a statement that a reasonable person in the position of the declarant would objectively foresee might be used in the investigation or prosecution of a crime. *See United States v. Hinton*, 423 F.3d 355, 360 (3d Cir. 2005). The threshold question in every case is whether the challenged statement is testimonial and, if so, whether it was introduced to establish the truth of the matter asserted. *See Hinton*, 423 F.3d at 357 (3d Cir. 2005). If not, the Confrontation Clause has no application.

In this case, Turner has not identified, and the court has been unable to locate, any out-of-court testimonial statement made by Ms. Murray that was admitted at trial. Rather, the premise of Turner's argument appears to be that his confrontation rights were violated because Jonathan Murray (Ms. Murray's son) and Michael Bordley (Ms. Murray's boyfriend) testified that they believed Ms. Murray was afraid. (D.I. 17, Appellant's Op. Br. in *Turner v. State*, No.16, 2011, at 15). Notably, although the State proffered the testimony of Jonathan and Bordley to prove the charge of aggravated menacing, neither individual testified about any **statements** made by Ms. Murray. Instead, Jonathan testified that Turner "pointed the gun at my mom, and she was scared because her mouth was open, and she was scared, and her eyes open really wide, and after that he pointed the gun [] at Mike [] and shot him." (D.I. 17, State's Ans. Br. in *Turner v. State*, No.16,2011, at 16) Similarly, Bordley testified that Turner pointed a gun at Ms. Murray and, when asked if Ms. Murray appeared normal, Bordley replied: "She was scared." *Id.* Given these circumstances, the court concludes that admitting Jonathan's and Bordley's impressions of Ms. Murray's fear did not violate the Confrontation Clause, because that testimony did not involve

7

any testimonial statements made by Ms. Murray. Accordingly, the court will deny claim one as meritless.

## B. Claim Two: Coerced Police Statement/Detective Testified Falsely at Suppression Hearing

Next, Turner contends that Detective Richardson lied during the suppression hearing when he testified that Turner re-initiated the questioning by the police during the second portion of his police statement. The court liberally construes Turner's argument to be that the trial court erred in denying his suppression motion due to perjured police testimony and, as a result, his conviction was illegally obtained through the use of a coerced confession.

In order to better comprehend Turner's argument, the circumstances of Turner's confession are set forth below:

> The next day, September 19, 2006, Turner and Crump were arrested at a WaWa convenience store and taken to the Dover Police Station. Crump, who was interviewed first, "stated that she walked into the building but that she was away from the apartment" when the shooting occurred. Detective Melvin "felt she did not commit the crime" and decided not to file any charges against Crump in connection with Bordley's shooting. Nevertheless, Crump was not immediately released because she had other pending charges and three outstanding capiases.
>
> Detective Melvin then questioned Turner, after reading him the *Miranda* warnings. Turner "denied any involvement, denied being at the scene, [and] stated that he was at the residence ... the day before, but not on the day that [the shooting] actually happened." According to Turner, Murray owed Turner $200 and that was the reason for Turner's visit to her apartment the day before the shooting occurred.
>
> When the interview concluded, Detective Richardson escorted Turner to the bathroom. While in the bathroom, Turner told Detective Richardson that he did not want [his fiancé] Crump to go to prison and that, if Richardson could get Crump released, Turner would "tell [the police] everything." Richardson responded that he "could make a recommendation" to the Justice of the Peace Court magistrate and "would try to get [Crump] released." Following that conversation, it was agreed that Turner and Crump would be taken to the Justice of the Peace Court for their initial appearances and that afterwards Turner would be brought

8

back to the police station for a second interview.

After Turner was processed and provided with copies of the arrest
warrant and affidavit of probable cause, Detectives Melvin and
Richardson took him and Crump to Justice of the Peace Court 7. Crump
was presented to the Justice of the Peace Court magistrate first. None of
Crump's charges pertained to Bordley's shooting and she was released on
unsecured bond. Turner was then presented to the Justice of the Peace
Court magistrate, who reviewed his charges (including the conspiracy
charge), set bail in the amount of $159,000 in cash, and ordered Turner
committed in default of bail.

After the Justice of the Peace Court hearing, Turner was brought
back to the police station and a second interview was conducted. Before
any questioning began, Detective Melvin stated:

I will read you your rights again. You heard them earlier, [and] you
heard them from the judge. You have the right to remain silent. Anything
you say can and will be used against you in a court of law. You have the
right to talk to a lawyer and have him present with you while you're being
questioned. If you cannot afford to hire ... a lawyer, one will be appointed
to represent you before any questioning, if you wish one. If you decide to
answer any questions with or without an attorney present, you may stop at
any time during questioning. Do you understand these rights [that] I
explained to you?

And with these rights in mind do you wish to talk to me?

Turner responded in the affirmative, *i.e.,* he understood his rights and wished to
talk to Detective Melvin. Turner did not ask for an attorney to be present
during questioning, nor did he ask to talk to an attorney before being
interviewed. Turner then told Detective Melvin that he went to Murray's
apartment the day before the shooting because Murray owed him $200.
Murray did not have the money and Turner decided to come back the next
day. Without informing "his wife" (Crump) of his intentions, Turner asked
Crump to meet him at Mishoe Towers. Both entered Murray's apartment,
but when Turner pulled out the gun, Crump ran out of the room and
dragged Jonathan outside the apartment. Turner said that he just wanted to
scare Bordley and did not mean to shoot anybody. He said that he aimed at
a wall and then calmly exited the apartment and the building. Crump was
outside waiting for him in a car. Upon seeing the paramedics arrive,
Turner realized that he had shot Bordley, but he did not tell Crump
anything until they were arrested the next day.

*Turner*, 957 A.2d at 568-69.

9

Following Turner's arrest, defense counsel filed a motion to suppress Turner's second taped statement to the Dover Police that took place on September 19, 2006 on the basis that the second incriminatory statement was coerced by police. The argument in the suppression motion asserted that the police officers "threatened to charge his fiancée (Crump) with conspiracy for attempted murder if he did not admit to being involved in the shooting." *Turner*, 957 A.2d at 569.

The Superior Court conducted a pre-trial evidence suppression hearing. After hearing testimony from Detective Melvin, Detective Richardson, and Turner, the Superior Court denied the motion, finding that there was no evidence of coercion. *Id.* at 570. The Superior Court opined,

> There is nothing demonstrated here by any stretch of any extrinsic police or state pressure. It is noted that the defendant does have ample experience in the criminal justice system . . . and that the behavior of the police officers was polite . . . There is clearly the observation and advising of his rights . . . I think [that Turner's] will was not overborne. His will was utterly carried out, which is to say, he wanted to produce a second statement at his insistence.

*Turner*, 957 A.2d at 570.

On direct appeal, Turner argued that the trial court erred by not suppressing the second taped custodial statement as involuntary because it was coerced. Specifically, he contended that the police threatened to have Crump prosecuted if he (Turner) did not admit his involvement in the shooting. The Delaware Supreme Court rejected this argument after concluding that Turner's fear that Crump would be charged with conspiracy to commit attempted murder stemmed from his own "internal and subjective belief based on his interpretation of his charges," and not from any police coercion. *Id.* at 571. The Delaware Supreme Court then explicitly held that Turner knowingly, voluntarily, and intelligently waived his Fifth Amendment right to remain silent, and

10

that his Sixth Amendment rights had not been violated because it was Turner, and not the police, who reinitiated the police questioning. *Id.* at 571-72, 574. Given these circumstances, Turner will only be entitled to habeas relief on claim two if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established Federal law.

The clearly established Supreme Court precedent governing involuntary/coerced confession cases is the standard articulated in *Schneckloth v. Bustamonte*, 412 U.S. 218, 224-27 (1973) and its progeny. Pursuant to *Schneckloth*, a court assessing the voluntariness of a defendant's incriminating statement to the police must examine the totality of the circumstances under which the statement was given to determine whether the defendant's will was overborne. *Id.* at 225. If the speaker's will has been overborne and his capacity for self-determination critically impaired, the use of the statement offends due process. *Id.* at 226-27. The totality of the circumstances test requires a court to consider "both the characteristics of the accused and the details of the interrogation." *Id.* at 224. When, as here, a petitioner asserts that a confession was coerced, coercive police conduct is a necessary pre-requisite to finding a violation of due process, and the petitioner must establish a causal link between the coercive conduct and the confession. *See Colorado v. Connelly*, 479 U.S. 157, 163-67 (1986).

Here, the Delaware Supreme Court cited to *Shneckloth* when it affirmed the Superior Court's denial of Turner's involuntary/coerced confession claim. *See Turner,* 957 A.2d at 570, n. 1. Therefore, the Delaware Supreme Court's decision was not contrary to clearly established federal law. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

11

The court's inquiry is not over, however, because it must also determine if the Delaware Supreme Court's decision involved a reasonable application of *Scheneckloth*. When making this assessment, the court must keep in mind that "28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). The Supreme Court has clearly indicated that trial judges should be accorded "great deference" on matters of witness credibility. *See Felkner v. Jackson*, 562 U.S. 594, 131 S.Ct. 1305, 1307 (2011). Thus, although the voluntariness of a confession is a legal question that falls outside the § 2254(e)(1) presumption of correctness, subsidiary factual questions, including a credibility determination at a suppression hearing, are entitled to the presumption of correctness rebuttable by clear and convincing evidence to the contrary. *See Miller v. Fenton*, 474 U.S. 104, 112 (1985).

During the suppression hearing, both Detective Richardson and Detective Melvin testified that neither of them ever told Turner that Crump would be charged with any crime related to Bordley's shooting if Turner did not confess. *Id.* at 569. The trial judge found the testimony of the two police officers to be more credible than Turner's testimony. On direct appeal, after considering the totality of circumstances, the Delaware Supreme Court held "that the trial judge properly concluded that Turner knowingly, voluntarily and intelligently waived his Fifth Amendment right to remain silent." *Id.* at 572.

In this proceeding, the court defers to the trial court's determination that the police officer's testimony regarding Turner's second statement was more credible than Turner's testimony, because Turner's unsupported assertion of police perjury does not amount to clear and convincing evidence rebutting the presumption of correctness that has attached to that determination. In turn, the Delaware Supreme Court reasonably deferred to the credibility

12

determination of the trial judge. *See Felkner*, 131 S.Ct. at 1307. For these reasons, the court concludes that the Delaware Supreme Court's denial of the instant argument did not involve an unreasonable application of Supreme Court precedent. Accordingly, the court will deny claim two for failing to satisfy § 2254(d).

## C. Claim Three: Prosecutorial Misconduct

In claim three, Turner contends that the State engaged in prosecutorial misconduct by misstating the evidence; allowing the aggravated menacing charge to go to the jury despite the fact that Ms. Murray did not testify; relying upon the allegedly-false testimony of Detective Richardson; and making an improper remark during the rebuttal argument. Turner presented the four arguments of claim three to the Delaware Supreme Court on post-conviction appeal, and the Delaware Supreme Court denied the arguments as barred by Rule 61(i)(3).

By applying the procedural bar of Rule 61(i)(3), the Delaware Supreme Court articulated a "plain statement" under *Harris v. Reed*, 489 U.S. 255, 263-4 (1984) that its decision rested on state law grounds. This court has consistently held that Rule 61 is an independent and adequate state procedural rule precluding federal habeas review. *See McCleaf v. Carroll*, 416 F. Supp. 2d 283, 296 (D. Del. 2006); *Mayfield v. Carroll*, 2005 WL 2654283 (D. Del. Oct. 11, 2005). Thus, the court cannot review the merits of claim three absent a showing of cause for the default, and prejudice resulting therefrom, or upon a showing that a miscarriage of justice will occur if the claim is not reviewed.

Turner does not allege, and the court does not discern, any cause for his failure to raise his prosecutorial misconduct clause on direct appeal. In the absence of cause, the court will not address the issue of prejudice. Moreover, the miscarriage of justice exception to the procedural

13

default doctrine is inapplicable, because Turner has not provided any new reliable evidence of his actual innocence.

Accordingly, the court will deny claim three as procedurally barred.

### D. Claim Four: Insufficient Evidence to Support Aggravated Menacing Conviction

In his final claim, Turner contends that the evidence presented by the State at trial was insufficient to support his conviction on aggravated menacing, because the victim, Ms. Murray, did not testify. The State asserts that the court should deny this claim as procedurally barred from habeas review, because Turner did not "fairly present" the instant insufficient evidence claim to the Delaware Supreme Court in a manner permitting it to consider the claim on the merits. While the court acknowledges that Turner did not present the instant insufficient evidence claim to the Delaware Supreme Court as an independent claim, the court notes that the Delaware Supreme Court actually considered the merits of the instant argument on post-conviction appeal when it held that the "Superior Court properly denied the motion [for judgment of acquittal] on the ground that the testimony of the victim's minor son and boyfriend was sufficient for the jury to find that the victim was in fear of imminent physical injury when Turner pointed a gun at her." *Turner*, 2011 WL 3964586, at *2. As such, the court must review claim four under § 2254(d) to determine if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly settled Federal law.

The United States Supreme Court precedent governing the instant insufficient evidence claim is *Jackson v. Virginia*, 443 U.S. 307 (1979). Pursuant to *Jackson*, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.*

14

at 319. This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16. Additionally, "a federal habeas court faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* at 326. However, it is not necessary that the evidence exclude every reasonable hypothesis except that of guilt. *Id.*

Finally, when reviewing a habeas application "alleging an unconstitutional conviction due to insufficient evidence, federal courts do not review the reasoning underlying the state court's decision. Instead, we focus on whether the state court's ultimate decision – affirmation of the conviction – was supported by sufficient record evidence." *Rodriguez v. Rozum*, 535 F. App'x 125, 130-31 (3d Cir. 2013).

Turning to the § 2254(d)(1) inquiry, the court notes that a state court's decision is "contrary to" clearly established law under § 2254(d)(1) if "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases . . . or if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that precedent]." *Williams*, 529 U.S. at 405. Significantly, the governing sufficiency of the evidence standard in Delaware is identical to the standard articulated in *Jackson*. *See Carter v. State*, 933 A.2d 774, 777 (Del. 2007). In this case, the Delaware Supreme Court held on post-conviction appeal that the "Superior Court properly denied the motion [for judgment of acquittal] on the ground that the testimony of the victim's minor son and boyfriend was sufficient for the jury to find that the victim was in fear of imminent physical injury when Turner pointed a gun at her." *Turner*, 2011 WL 3964586, at *2. Admittedly, the Delaware Supreme Court did not mention the *Jackson* rule or the governing Delaware precedent

15

for insufficiency of the evidence claims in its decision. Nevertheless, because the state court decision does not contradict the *Jackson* standard, the court concludes that the Delaware Supreme Court's rejection of claim four was not contrary to *Jackson*.

In addition, the Delaware Supreme Court's decision did not involve an unreasonable application of *Jackson*. In Delaware, a "person is guilty of aggravated menacing when, by displaying what appears to be a deadly weapon, that person intentionally places another person in fear of imminent physical injury." Del. Code Ann., tit. 11, § 602(b). Notably, Delaware precedent recognizes that a finder of fact can draw an inference of fear in appropriate circumstances, even if the victim does not testify about such fear. *See Lewis v. State*, 869 A.2d 327 (Table), 2004 WL 3220296, at *2 (Del. Feb. 22, 2005); *Carter v. State*, 105 A.3d 988 (Table), 2014 WL 7010032, at *2 (Del. Nov. 12, 2014).

In this case, the jury was presented with the testimony of Jonathan (Ms. Murray's son) and Bordley (Ms. Murray's boyfriend) describing her fearful reaction when Turner pointed a handgun at her and attempted to shoot her. For instance, Ms. Murray's son testified that his mom was scared when Turner pointed the gun at her, "because her mouth was open, and she was scared, and her eyes open really wide." (D.I. 17, State's Ans. Br. in *Turner v. State*, No.16,2011, at 16) Similarly, Bordley testified that Turner pointed a gun at Ms. Murray and, when asked if Ms. Murray appeared normal, Bordley replied: "She was scared." *Id.*

After considering this evidence in a light most favorable to the prosecution, the court concludes that a rational trier of fact could have inferred Ms. Murray's fear from the physical description of her facial expressions, and have found petitioner guilty of aggravated menacing

16

beyond a reasonable doubt.[3] Therefore, the Delaware Supreme Court's denial of the instant claim involved a reasonable application of *Jackson*. The court also concludes that the Delaware Supreme Court's decision involved a reasonable determination of the facts in light of the evidence presented. Accordingly, the court will deny claim four for failing to satisfy the requirements of § 2254(d).

## IV. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). If a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Id.*

The court has concluded that Turner's petition fails to warrant federal habeas relief, and is persuaded that reasonable jurists would not find this conclusion to be debatable. Therefore, the court will not issue a certificate of appealability.

---

[3] The court notes that Turner, himself, admitted in his second police statement that his intent was to scare Bordley when he aimed the gun at a wall. *See Turner*, 957 A.2d at 568-69. Turner's recognition that aiming a gun at a wall would instill fear in Bordley implicitly recognizes that aiming a gun at an individual would instill fear in that person. Given these circumstances, a rational trier of fact could also reasonably infer that Turner instilled fear in Ms. Murray when he pointed the gun at her.

17

## V. CONCLUSION

For the reasons stated, Turner's petition for habeas relief pursuant to 28 U.S.C. § 2254 is denied without an evidentiary hearing or the issuance of a certificate of appealability. An appropriate order shall issue.